(C. D. 516)

HOYT, SHEPSTON & SCIARONI *v.* UNITED STATES

United States Customs Court, Second Division

(Decided June 12, 1941)

*Lawrence & Tuttle* (*Charles F. Lawrence* of counsel) for the plaintiffs.
*Charles D. Lawrence*, Acting Assistant Attorney General (*Joseph E. Weil* and *Richard H. Welsh*, special attorneys), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: This is a suit against the United States, arising at the port of San Francisco, brought to recover certain customs duties alleged to have been improperly exacted on two types of merchandise, one a machine, and the other, two metal cylinders. The machine was invoiced as "one complete heavy four-pillar gold-blocking and embossing press, model Krause." Duty was levied thereon at the rate of 27½ per centum ad valorem under paragraph 372 of the Tariff Act of 1930 as a machine not specially provided for. It is claimed that said machine is properly dutiable at but 25 per centum ad valorem under said paragraph as printing or paper-box machinery.

The two cylinders were invoiced as "2 Printing Cylinders (without design)." Duty was levied thereon at the rate of 30 per centum ad valorem under paragraph 395 of said act which, so far as pertinent, reads as follows:

Embossing rollers of steel or other metal, 30 per centum ad valorem; * * * *Provided,* That the foregoing rates shall apply whether or not the articles are imported separately, or as parts of machines.

At the hearing, held at San Francisco on March 8, 1940, the plaintiffs offered in evidence the testimony of John T. Raisin, president of the plaintiff-corporation, who testified that he was familiar with the machine in question and with its operation. He then proceeded to testify in part as follows:

Q. Will you describe the machine and its method of operation?—A. It has two plattens. They are brought together and they exert up to 200 pounds pressure, and it is used for cutting and creasing of cardboard blanks.

Q. Could you describe it a little more fully?—A. There are two flat plates, 24 by 18 inches each, which go together, under tremendous pressure.

Q. They are pressed together?—A. They are pressed together, and in order to cut a crease you insert a cutting die, and the pressure punches the die against the cardboard and cuts it.

Q. How large is the machine itself?—A. The machine itself is—it is called an upright machine, with four large pillars holding the head. It looks more like a stamping press.

 *  *  *  *  *  *  *

Q. It is invoiced as gold blocking and embossing press. Will it gold block?—A. It won't.

Q. Will you state why it will not gold block?—A. In order to gold block there is an extra attachment that comes with a machine to feed the gold leaf in rolls to make the gold stamping; but we did not buy that part of the machine.

 *  *  *  *  *  *  *

Q. I ask if you are familiar with attachments which would be necessary to make this machine into one which would gold block?—A. I am.

Q. Have you any idea what the value of such attachment would be?

 *  *  *  *  *  *  *

A. About one thousand dollars.

 *  *  *  *  *  *  *

Q. What type of blanks do you make out of that machine?—A. Cardboard blanks that form a paper box.

 *  *  *  *  *  *  *

Q. Have you seen them (identical machines) elsewhere?—A. In other paper box factories on the coast.

Q. How were such machines used when you saw them?

 *  *  *  *  *  *  *

A. They were used for making boxes out of.

Judge DALLINGER. Did you ever see them anywhere else except in paper box factories?

The WITNESS. I don't think so.

It is evident from the foregoing that this case is to be distinguished from the case of *United States* v. *Frank P. Dow Co., Inc.*, C. A. D. 169, in which the Court of Customs and Patent Appeals held that certain machines manufacturing corrugated sheets, which when lined on one side were used for making corrugated wrappers, and when lined on both sides were used as material for making paper boxes, were not classifiable as paper-box machinery under paragraph 372 of the Tariff Act of 1930.

It will be observed that in the instant case the product of the machine in question is used *only* in making parts of paper boxes and for no other purpose. As pointed out in its decision, the appellate court refers to the fact that the courts have frequently made a distinction between the words "machine" and "machinery." Moreover, in its decision the appellate court said:

> We hold, therefore, that the term "paper box machinery" means machinery used principally in the making of paper boxes. The rollers in controversy are not parts of paper box machinery but are parts of the machine used to make material, most of which, according to the testimony submitted by the importer, is chiefly used by one American firm to make paper boxes. The mere fact that in the instance at bar the rollers may be used in the same factory where paper boxes are made is a matter of no importance.  * * *

It is a well-known fact, of which this court can take judicial notice, that neither in a paper box factory nor in a bookbindery is there usually any single machine that performs the entire operation, and to hold that the provision in paragraph 372 for "bookbinding machinery" and "paper-box machinery" is limited to a single machine capable of performing the entire operation would, in our opinion, defeat the plain intention of the Congress.

As to the other class of merchandise in question the witness testified in part as follows:

Mr. LAWRENCE. I stated that the protest involved some rollers. There were two printing cylinders (without design) including gear wheels, and they are claimed to be parts of a printing machine, which is also on this invoice, and which was returned as a printing machine.

\* \* \* \* \* \* \*

Q. Are you familiar with those two printing cylinders?—A. I am.

Q. Have you seen it in operation?—A. I have.

Q. At your plant?—A. Yes, sir.

Q. Will you describe them?—A. There are two steel cylinders with the gear, one gear on the end of each one which drives them, and the purpose is, you attach the printing plates on to these cylinders.

\* \* \* \* \* \* \*

Mr. WEIL. You say that they attach the printing plates on to these rollers?

Judge DALLINGER. You are now referring to the printing machine also on the invoice?

The WITNESS. Yes, sir. It is different machinery.

By Mr. LAWRENCE.

Q. You are referring to this machine. Is this machine you refer to the one invoiced as "aniline" printing machines?—A. Yes, sir.

Q. Will you describe how the rollers are used with that machine?—A. This is a rotary printing press. It is a two-colored press, and there are two cylinders, and in order to print you put your printing plate on top of the cylinder, and it revolves, and then it prints. You can't print unless you put the plate on it.

Judge DALLINGER. Do I understand you to say that those rollers that are on the invoice in this case were parts of a printing machine, or printing press, which

was in the same case, which was imported by you, and which was assessed by the customs officials, by the collector, as a printing machine?

The WITNESS. That is right.

\*  \*  \*  \*  \*  \*  \*

Judge DALLINGER. Does that have any use as you know it, any use except as parts of this printing machine?

The WITNESS. No, sir; they have no other use.

Judge DALLINGER. In other words, they are essential to the operation of the printing machine if you want to print in that particular way?

The WITNESS. You can't use the machine without them.

Judge DALLINGER. They have no use without the machine.

The WITNESS. No, sir.

\*  \*  \*  \*  \*  \*  \*

## On cross-examination the witness testified in part as follows:

By Mr. WEIL.

X Q. Mr. Raisin, you say that this machine is used in your establishment for the cutting and creasing of cardboard blanks; is that correct?—A. Yes, sir.

\*  \*  \*  \*  \*  \*  \*

X Q. Will it cut and crease cardboard blanks in the condition as imported?— A. Yes, sir.

X Q. Without the addition of anything?—A. Yes, sir; with the cardboard and cutting die.

X Q. The cutting die; is that imported?—A. No, sir.

\*  \*  \*  \*  \*  \*  \*

X Q. That cutting die is a domestic product, isn't it?—A. Yes, sir.

X Q. So that the machine as imported will not cut or crease cardboard blanks, will it, without the addition of something else?—A. No, sir.

\*  \*  \*  \*  \*  \*  \*

X Q. Isn't it a fact, Mr. Raisin, that it can act as an embossing press in the condition as imported without the addition of anything else?—A. No.

X Q. What do you have to do to make it do embossing?—A. Add a die.

\*  \*  \*  \*  \*  \*  \*

X Q. Now, in reference to these rollers, they are from a different manufacturer than the manufacturer of this gold blocking and embossing press machine, is that correct?—A. Yes, sir.

X Q. And these rollers are without design; is that right?—A. That is right.

\*  \*  \*  \*  \*  \*  \*

X Q. And can these printing cylinders or rollers be used in another machine?— A. No, sir.

X Q. Only in this one machine?—A. Yes, sir.

\*  \*  \*  \*  \*  \*  \*

X Q. Now, it is a printing roller irrespective of the classification of it?—A. No, it is not a printing roller, because it won't print. It is a piece of machinery to which you add a printing plate.

## On redirect examination the witness testified in part as follows:

By Mr. LAWRENCE.

R. Q. Would you describe the dies with which you say you do the cutting and creasing of cardboard blanks?—A. A cutting and creasing die is a piece of wood with holes, and steel cutting rollers.  \*  \*  \*.

R. Q. Can you make more than one kind of box with these dies?—A. For each size and shape, yes, sir.

The Government offered in evidence the testimony of George H. Godfrey, United States examiner of merchandise at the port of San Francisco for the last 11 years, who testified in part as follows:

Q. Did you advisorily classify the merchandise in this case?—A. I did.

 *    *    *    *    *    *    *

Q. In reference to this machine invoiced as gold blocking and embossing press, did you have occasion to see that machine in the establishment of the plaintiff in this case?—A. I did.

 *    *    *    *    *    *    *

Q. At that time you saw the printing machine there?—A. I did.

Q. Did you observe whether anything had been added to it other than what had been imported?—A. I did.

 *    *    *    *    *    *    *

Mr. LAWRENCE. State what you saw.

 *    *    *    *    *    *    *

The WITNESS. Dies to cut and shape candy boxes, attached to this machine.

 *    *    *    *    *    *    *

Q. Were those dies imported with the machine?—A. No.

 *    *    *    *    *    *    *

Q. Did you have occasion to see these rollers at the time of importation?—A. Yes, sir, I did.

Q. Will you describe them to the court?—A. They were on another machine.

Judge DALLINGER. What kind of machine was that?

The WITNESS. That is a printing machine. I considered them to be print rollers.

 *    *    *    *    *    *    *

Judge DALLINGER. Were they all printing machines that they were used with?

The WITNESS. Yes, sir.

On cross-examination the witness testified in part as follows:

X Q. * * *. You say that you saw the machine at the importer's plant, and that it was being used with dies.—A. The dies were shaped for whatever they were producing out there, boxes for the filling of candy.

Upon this record we hold as a matter of law that the machine invoiced as "one complete heavy four-pillar gold-blocking and embossing press, model Krause" is properly dutiable at the rate of 25 per centum ad valorem under paragraph 372 of the Tariff Act of 1930 as paper-box machinery, as alleged by the plaintiffs; and that the articles invoiced as "2 Printing Cylinders (without design)," not being ready for use for printing without the addition of domestic dies, are properly dutiable at the rate of 25 per centum ad valorem under paragraph 372 of said act as unfinished parts of printing machines, as alleged by the plaintiffs, rather than at the rate of 30 per centum ad valorem under paragraph 395 of said act as print rollers of the kind therein made dutiable at that rate, as classified by the collector. *United States* v.

*Shhenkers, Inc.* 17 C. C. P. A. 231, T. D. 43669, and *United States* v. *Sussex Print Works*, 17 C. C. P. A. 257, T. D. 43686. As to all other merchandise the claims are overruled. Judgment will be rendered accordingly.